IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

FILED

.... 1  2003

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **CORETTA KIRKLAND as parent and next friend of DEMARIO JONES, a minor,** | ) ) ) ) | |
| Plaintiff | ) ) | Civil Action Number |
| vs. | ) ) | **01-C-1008-W** |
| **GREENE COUNTY BOARD OF EDUCATION and ROBERT ELLIOT and JAMES MORROW, in their official and individual capacities,** | ) ) ) ) ) | |
| Defendants. | ) | |

**ENTERED**

JAN 1 5 2003

### MEMORANDUM OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Coretta Kirkland brings claims on behalf of her minor son, Demario Jones, alleging that public school officials violated his rights under the First, Fourth, and Fourteenth Amendments to the United States Constitution by subjecting him to excessive corporal punishment and an unreasonable search of his book bag. Kirkland also brings pendent claims under Alabama law for assault, battery, invasion of privacy, intentional infliction of emotional distress, negligence, and wantonness. Defendants, the Greene County Board of Education, Robert Elliot, and James Morrow, have moved for summary judgment. Upon consideration of the record and the arguments of counsel, the court concludes that defendants' motion for summary judgment is due to be granted in part and denied in part.



30

## I. BACKGROUND[1]

On April 21, 1999, Jones was a 13 year-old student in the seventh grade at Eutaw High School in Greene County, Alabama.  His school records show that he was often a disciplinary problem; he had been suspended for one day in October 1998 for fighting with a fellow student and another three days in late January 1999 after a teacher found him in possession of a box cutter, and he had been assigned to detention and "work detail" a number of other times that school year.  On this morning, a teacher sent Jones to the main office for making excessive noise in the hallway.  There he was counseled by the school principal, defendant Morrow, and sent back to class.  A short time later, however, another teacher called the office and reported a disturbance outside of her classroom.  Morrow and the assistant principal, defendant Elliot, went to the scene to investigate, where they found Jones and two other boys talking in the hallway.  Morrow and Elliot then directed the three boys to accompany them to the office.  While walking to the office, Jones allegedly complained to Morrow and Elliot that they "didn't have anything on" him and asked why he was being made to come to the office.

Once in the office, Morrow ordered the boys to sit down, and he verbally reprimanded them for engaging in disruptive behavior.  At some point soon after the boys entered the office, Elliot allegedly took possession of Jones's book bag, but not those of his two companions, put it on a counter top on the other side of the room, and began to examine it.  Jones asked why they were going to check his bag, and either Morrow or Elliot replied that someone had stolen a microphone or a

---

[1]The parties dispute many of the underlying facts in this case.  However, because the case is now before the court on defendants' motion for summary judgment, the court views the evidence in the light most favorable to the non-movant.  *See, e.g., Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1185 (11th Cir. 2002).  Accordingly, the facts set forth are for summary judgment purposes only.  They may not be the actual facts.

walkie-talkie and then somebody said that Jones had some dice in his bag.  As Morrow was examining his bag, Jones got out of his seat and started walking across the room towards where Elliot was standing with his book bag, purportedly either to help Elliot open the book bag because the zippers upon it were broken or to show Elliot that a computer compact disc that he had found inside the bag was innocuous.[2]  However, after Jones had walked past Morrow on his way to Elliot, Morrow turned around and hooked Jones's arm with the crook of a metal cane that Morrow was using at the time as a temporary walking aid as he recovered from a leg injury.  Spinning Jones around to face him, Morrow exclaimed, "I'm tired of you, boy!"  Morrow then allegedly took the cane in both hands over his shoulder and brought it down forcefully upon Jones's back and then on his ribs.[3]  Jones tried to protect himself by covering his mid-section with his arms, but Jones hit him once more with the cane on the top of the head.

Jones became very upset.  When he indicated that he intended to go to his mother and tried to leave the office, Morrow allegedly told Elliot to get him, and Elliot did so, allegedly by twisting Jones's arm and grabbing him by the back of the neck.  Jones claims, however, that he managed to

---

[2]Jones's testimony with regard to why he was up at this time is not entirely consistent. He first suggests that he was up to help Elliot open the bag.  *See* Jones Depo. at 61-66. Subsequently, when asked to explain the sequence of events in the office in greater detail, he said that he walked over to Elliot, opened the bag for him, returned to his seat, and then got up a second time to show Elliot that the CD Elliot found was harmless.  *Id.* at 155-61.  Then in his declaration, offered in opposition to defendants' motion for summary judgment, Jones seems to revert to his original story that he was up helping Elliot open the bag.  *See* Jones Decl. ¶¶ 3, 6.

[3]*See* Jones Depo. at 81-82; Jones Decl. ¶ 6.  Morrow expressly denies that he hit Jones in the fashion or under the circumstances that Jones alleges.  Morrow asserts, rather, that when he noticed that Jones had gotten out of his seat and was heading towards Elliot, Morrow turned around and swung his cane around to obstruct Jones's path in an attempt to prevent Jones from interfering in Elliot's search of the bag and to have him return to his seat as previously ordered. Morrow admits that his cane came into contact with Jones when he turned around and held out his cane to block Jones's path, but Morrow maintains that this contact was inadvertent.

break free from Elliot's grip, and he ran out of the office. Jones ran out of the school building, with Elliot following. Once outside, Jones started walking back towards the school, whereupon Elliot met him and grabbed him by the back of the neck again. By this time Morrow was outside as well, and he indicated to Elliot that he was going to drive Jones home. Jones continued to struggle, but Elliot held onto him and steered him towards Morrow's nearby automobile, in which Morrow was by this time seated. Elliot forced Jones to sit down in Morrow's car and closed the door. Morrow drove Jones home, where he left Jones in the care of his grandmother, who lives next door.

Jones's grandmother and aunt took Jones to the hospital, where he was examined, X-rayed, and released with instructions to follow up the next day with his regular doctor. As to the extent and severity of his injuries, Jones admits that he did not bleed or suffer any broken bones from the incident. However, Jones claims that he had a "knot" on his head the "size of an egg" where Morrow hit him and that this area later became "soft" and was "sore for a long time."[4] He further alleges that although he did not suffer such symptoms before the incident, he has since continued to suffer from severe headaches and dizziness, usually at least once per week, sometimes as often as three times per week. Finally, he claims that a doctor has prescribed pain medication but that it has been only partially effective in relieving his symptoms.

On April 23, 2001, Kirkland filed this action on behalf of her son, asserting a variety of federal and state law claims against Morrow, Elliot, and the Greene County Board of Education. The federal claims, brought pursuant to 42 U.S.C. § 1983, are as follows: (1) Morrow is liable based upon his striking Jones with his walking cane, on the theory that it constituted excessive corporal punishment and violated Jones's right to substantive due process under the Fourteenth Amendment;

---

[4]Jones Decl. ¶ 5. *See also* Jones Depo. at 80, 82.

(2) Morrow is also liable for violating Jones's First Amendment right to free speech because his act of hitting Jones was done in response to Jones's speaking in opposition to an unlawful search of his book bag; (3) Elliot is liable for violating Jones's rights under the Fourth Amendment based upon his conducting an unreasonable seizure and search of Jones's book bag; and (4) the Board is also liable for the aforementioned constitutional violations committed by Morrow and Elliot because the Board failed properly to train and supervise them and because, as to Morrow's actions only, Morrow was a policymaker for the Board. Kirkland's Alabama law claims are for assault, battery, invasion of privacy, intentional infliction of emotional distress, negligence, and wantonness, based upon Morrow's hitting Jones with the cane, Elliot's grabbing Jones by the neck, and the seizure and search of Jones's book bag. Finally, Kirkland claims that the Board is additionally liable for these torts under the doctrine of respondeat superior. Defendants have moved for summary judgment on all claims.

## II. SUMMARY JUDGMENT STANDARDS

A district court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The trial judge is not to weigh the evidence at summary judgment to determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510-11, 91 L.Ed.2d 202 (1986). Further, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255, 106 S.Ct. at 2513 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S.

144, 158-59, 90 S.Ct. 1598, 1608-09, 26 L.Ed.2d 142 (1970)). "Summary judgment should only be entered when the moving party has sustained its burden of showing the absence of a genuine issue as to any material fact when all evidence is viewed in the light most favorable to the non-moving party." *Morrison v. Washington County, Ala.*, 700 F.2d 678, 682 (11th Cir. 1983) (citing *Adickes*, 398 U.S. at 157, 90 S.Ct. at 1608).

### III. DISCUSSION

#### A.     The Section 1983 Claims

Section 1983 creates a civil cause of action for any person deprived of any rights, privileges, or immunities, secured by the Constitution and laws of the United States, by a person acting under color of state law. 42 U.S.C. § 1983.[5] "In order to prevail in a civil rights action under section 1983, 'a plaintiff must make a prima facie showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law.' " *Marshall County Bd. of Educ. v. Marshall County Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993) (quoting *Bannum, Inc. v. City of Ft. Lauderdale*, 901 F.2d 989, 996-97 (11th Cir. 1990). Defendants do not dispute that Morrow and Elliot's relevant actions were taken under color of law for purposes of section 1983. *See generally United States v. Classic*, 313 U.S. 299, 326 (1941) ("Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law"). Accordingly, the sole issue with respect to a

---

[5]Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage of any State ... subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983.

prima facie case on the federal claims is whether Morrow or Elliot deprived Jones of a constitutional

right. *See Anderson v. Nosser*, 438 F.2d 183, 188 (5th Cir. 1971)[6] ("Since all defendants in this case

are state or municipal officials, the requisites of section 1983 are satisfied upon a showing of the

denial of a constitutional right"). Here, Kirkland has claimed that Morrow violated Jones's

substantive due process rights under the Fourteenth Amendment by using excessive corporal

punishment in hitting him with the cane.[7]  Kirkland also asserts that this punishment violated her

son's free speech rights under the First Amendment because it was inflicted in response to his

voicing opposition to an allegedly unlawful search of his book bag.  Finally, Kirkland claims that

Elliot violated the Fourth Amendment's prohibition against unreasonable searches and seizures by

virtue of taking possession of Jones's book bag and searching it.

## 1.    Fourteenth Amendment–Substantive Due Process

### a.    Was There a Constitutional Violation?

Kirkland contends that Morrow's hitting her son with the metal walking cane violated his

---

[6]All decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[7]Counsel for plaintiff seems to imply in the brief in opposition to summary judgment that plaintiff is also asserting a § 1983 claim against Morrow and Elliot based upon his "forcibly seiz[ing] the plaintiff, forc[ing] him into a car, and tak[ing] him home." Plaintiff's Brief at 10-11.  However, noticeably absent from the complaint is a claim that Elliot's use of force against Jones or Morrow's driving Jones home violated the Constitution. *See* Complaint ¶¶ 21-28. Counsel's argument in a summary judgment brief does not substitute for a properly filed amended complaint. *See, e.g., Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (A "plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."); *Kansas Mun. Gas Agency v. Vesta Energy Co.*, 840 F.Supp. 814, 821 (D. Kan. 1993) (A party cannot alter the basis for recovery in a summary judgment response.). Furthermore, plaintiff has abandoned any § 1983 claim against Elliot based upon his use of excessive force. *See* Plaintiff's Brief at 17 n.21. Further, it will suffice to say that any claim that Morrow violated Jones's constitutional rights by driving him home is utterly without merit.

right to substantive due process under the Fourteenth Amendment.[8]  The substantive component of

the Due Process Clause "protects individual liberty against 'certain government actions regardless

of the fairness of the procedures used to implement them.' " *Collins v. City of Harker Heights*, 503

U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed. 2d 261 (1992) (quoting *Daniels v. Williams*, 474

U.S. 327, 331 106 S.Ct. 662, 665, 88 L.Ed. 2d 662, 668 (1986)). "The substantive component of the

Due Process Clause protects those rights that are 'fundamental,' that is, rights that are 'implicit in

the concept of ordered liberty.' " *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc)

(quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937)). "[T]he

substantive component of the due process clause is violated by [state conduct] when it 'can properly

be characterized as arbitrary, or conscience shocking, in a constitutional sense.' " *County of

Sacramento v. Lewis*, 523 U.S. 833, 848, 118 S.Ct. 1708, 1717, 140 L.Ed. 2d 1043 (1998) (citation

omitted).

      In this circuit, "excessive corporal punishment, at least where not administered in conformity

with a valid school policy authorizing corporal punishment . . . , may be actionable under the Due

Process Clause when it is tantamount to arbitrary, egregious, and conscience shocking behavior."

*Neal v. Fulton County Bd. of Ed.*, 229 F.3d 1069, 1074 (11th Cir. 2000).  At a minimum, a plaintiff

in such a case must show facts demonstrating "(1) a school official intentionally used an amount of

force that was obviously excessive under the circumstances, and (2) the force used presented a

reasonably foreseeable risk of serious bodily injury." *Id.* at 1075.  In determining whether the

amount of force used is obviously excessive, a court is to consider the totality of the circumstances,

---

[8]The Fourteenth Amendment provides, in relevant part: "No State shall . . . deprive any
person of life, liberty, or property, without due process of law . . . ."  U.S. Const. amend XIV, §
1.

including "(1) the need for the application of corporal punishment, (2) the relationship between the need and the amount of punishment administered, and (3) the extent of the injury inflicted." *Id.*

Defendants argue that Morrow's alleged actions do not give rise to a substantive due process violation under the standards set forth in *Neal*. The court disagrees. None of Jones's conduct on the morning in question, including talking in the hallways and office and getting out of his seat and walking towards Elliot, amounted to a particularly serious infraction of school rules. Morrow and Elliot also each admitted that they did not perceive Jones's actions to be threatening or intimidating. Jones's own testimony does suggest that Morrow was likely justified in using at least some measure of physical force, as Jones acknowledges that he had gotten up out of his seat and was walking across the room in Elliot's direction when Morrow stopped him. Thus, although Jones had defied Morrow's command to remain seated and Morrow could have reasonably thought that Jones might interfere with Elliot's search of his book bag. Accordingly, Morrow could have used some force to obstruct Jones and make him return to his seat, and it might be assumed that Morrow would have been justified in using some reasonable amount of additional force as corporal punishment for Jones's disobedience and his engaging in generally disruptive conduct on the morning in question. Nonetheless, viewing the evidence in the light most favorable to Jones, his transgressions are relatively trivial, and a jury could find that Morrow summarily inflicted a severe physical punishment that was not administered pursuant to, or in conformity with, any formally adopted corporal punishment policy. Specifically, Morrow allegedly grasped a metal cane in both hands, took it back over his shoulder and brought it down forcefully to strike Jones, a 13-year-old boy, three times in succession on the back, ribs, and head. In particular, it was obvious that the final blow to the vulnerable head area was wholly unnecessary, as Jones had assumed a submissive posture in which

he attempted to cover his mid-section. The court concludes that a jury could find that Morrow's use of force was intentional[9] and violated Jones's right to liberty under substantive due process because it was both obviously excessive under the circumstances and carried with it a foreseeable risk of serious bodily injury.

Defendants urge, however, that Jones's injuries themselves are, as a matter of law, not sufficiently "serious" to sustain a substantive due process violation under *Neal*. Admittedly, Jones did not suffer injuries as severe those of the 14-year old male student in *Neal,* who claimed that his football coach blinded him in one eye when he hit him in the face with a metal "weight lock" as a disciplinary measure for his involvement in a fight with another student. *See Neal*, 229 F.3d at 1071. Although holding that such injury was sufficient to indicate that there had been excessive corporal punishment in violation of the Constitution, the *Neal* court also cautioned that "the kind of minor injury suffered by a student during the administration of traditional corporal punishment will rarely, if ever, be the kind of injury that would support a federal due process claim . . . ." *Id.* at 1076.

However, the punishment in this case, as in *Neal*, did not involve a spanking or paddling or other traditional form of corporal punishment. Furthermore, *Neal*'s pronouncements about how

---

[9]Morrow argues that there is no evidence to contradict his claim that he hit Jones on the head only accidentally as he attempted to use the cane to block Jones's path to Elliot, rather than as an intentionally inflicted punishment. If a jury were to credit Morrow's account, such would preclude recovery under a substantive due process theory. *See Neal*, 229 F.3d at 1075 n.3 (stating that, in order for liability to attach, "the teacher must *subjectively intend* to use [an] obviously excessive amount of force . . . .") (emphasis added); *see also Nix v. Franklin County School Dist.*, 311 F.3d 1373, 1376-79 (11th Cir. 2002) (holding that even if school officials were "deliberately indifferent" to the safety of a 17 year-old student and such indifference caused him to die accidentally from an electric shock during class, such did not violate substantive due process). However, Jones's testimony, which the court must credited on summary judgment, supplies ample evidence to create questions of material fact on Morrow's intent and the circumstances under which he hit Jones.

"serious" an injury must be to support a claim are dicta: the court found that the student's loss of an eye would satisfy any minimum injury requirement that might exist, and thus the court expressly disavowed that it was establishing a baseline for how "serious" an injury must be. *Id.* Indeed, it is well established that the plaintiff's suffering a "serious" or "significant" injury is neither a necessary nor a sufficient condition for demonstrating that a state official used excessive force in violation of the Constitution; the focus of such claims is upon, rather, the volitional actions of the official in applying force of a given degree and nature, weighed against the need for, and propriety of, using force as shown by all the attendant circumstances. *See Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S.Ct. 995, 999, 117 L.Ed. 2d 156 (1992) (a "serious" or "significant" injury is not required to show that a state official used excessive force in violation of the Eighth Amendment); *Lee v. Ferraro*, 284 F.3d 1188, 1200 (11th Cir. 2002) ("Just as ordinary reasonable force does not become excessive force when the force aggravates . . . a pre-existing condition the extent of which was unknown to the officer at the time, objectively unreasonable force does not become reasonable simply because the fortuity of the circumstances protected the plaintiff from suffering more severe harm." (citation and internal quotation marks omitted)); *Shillingford v. Holmes*, 634 F.2d 263, 266 (5th Cir. Jan. 1981) (holding that a police officer violated substantive due process by using his nightstick to strike a camera that the plaintiff was holding to his face to photograph the police arresting a third person; while the plaintiff suffered lacerations, the court noted that it was "merely fortuitous" that the attack was not "crippling" and that the "same blow might have caused blindness or other permanent injury"). *See also Petta v. Rivera*, 143 F.3d 895, 902 (5th Cir. 1998) (under the reasoning in *Hudson, supra*, there is no "serious" injury requirement for excessive force claims brought under either the Fourth or Fourteenth Amendments); *Metzger v. Osbeck*, 841 F.2d 518, 522 (3rd Cir. 1988) (Weis,

J., concurring and dissenting) ("[I]t is the intent to use excessive force–not the extent of injury--which is dispositive of the constitutional claim [involving corporal punishment in the public schools]"). Of course, the severity of a plaintiff's injury is one of several relevant considerations in the constitutional excessive force calculus because it may often, though not always, serve as a *proxy* for the nature and amount of force used. *See Hudson*, 503 U.S. at 6-7, 112 S.Ct. at 999; *Gottlieb ex rel. Calabria v. Laurel Highlands School Dist.*, 272 F.3d 168, 175 (3rd Cir. 2001) (even though a student alleged that a school official's shove of her shoulder resulted in serious back problems when she hit a door jam, the court found no substantive due process violation because it could not be inferred from the official's act itself that it was done maliciously or sadistically); *Cummings v. McIntire*, 271 F.3d 341, 346 (1st Cir. 2001) (noting in the context of a substantive due process excessive force case that the "severity of the injury in the ordinary case may be a fair proxy for egregious behavior leading to liability . . .").

Jones claims that he sustained a relatively substantial head injury as a result of Morrow's actions, including having an "egg-sized knot" that required medical attention that day, which later became a "soft" area that was "sore for a long time." Jones further maintains that Morrow's striking his head caused him to suffer continuing headaches and dizziness on at least a weekly basis, for which a doctor has prescribed medication. These alleged injuries would themselves be relatively substantial, and they tend to corroborate Jones's description of events suggesting that Morrow hit his head with the cane using significant force, certainly more than a de minimis level.[10] Furthermore,

---

[10]A plaintiff generally may not prevail on a constitutional excessive force claim where the amount of force used is only "de minimis." *See Hudson,* 503 U.S. at 9-10, 112 S.Ct. at 1000) ("The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." (internal quotation marks omitted);

Morrow's alleged acts themselves, the forceful striking of an adolescent male student in the head with a metal implement without sufficient justification, can be construed as quite comparable to those of the football coach in *Neal*, notwithstanding the less severe consequences here. Indeed, it may be merely fortuitous that Morrow's alleged actions did not cause more severe injury. *See Lee*, 284 F.3d at 1200; *Shillingford*, 634 F.2d at 266. The court concludes that the extent of Jones's injuries supplies no basis for holding, as a matter of law, that there was no substantive due process violation.

### b.    Is Morrow Protected by Qualified Immunity?

Morrow next claims that he is protected by qualified immunity and thus entitled to summary judgment on the substantive due process claim against him. "[G]overnment officials performing discretionary functions generally are granted a qualified immunity and are 'shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Wilson v. Layne*, 526 U.S. 603, 609, 119 S.Ct. 1692, 1696, 143 L.Ed. 2d 1818 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "To establish the defense of qualified immunity, the burden is first on the defendant to establish that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority." *Harbert Intern., Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998). If the defendant official establishes that he was acting within his discretionary authority, the burden then shifts to the plaintiff to show that when the defendant

---

*Nolin v. Isbell*, 207 F.3d 1253, 1257 (11th Cir. 2000) ("[T]he application of de minimis force, without more, will not support a claim for excessive force in violation of the Fourth Amendment."); *United States v. Walsh*, 194 F.3d 37, 48 (2nd Cir. 1999) (*Hudson*'s de minimis force principle is applicable to excessive force claims brought under the Fourteenth Amendment).

acted, the law established the contours of a right so clearly that a reasonable official would have understood his acts were unlawful. *Id.*; *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993).

Kirkland submits in her brief that Morrow had no authority, "discretionary or otherwise," to strike a minor child in the head with a metal cane without justification. However, this misconstrues what an official must show in order to show that he was engaged in a discretionary function for purposes of qualified immunity. "The inquiry is not simply whether it was within the defendant's authority to commit the allegedly illegal act. . . . . 'Instead, a court must ask whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.' " *Harbert*, 157 F.3d at 1282 (quoting *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997)). Because the evidence shows that the administration of school discipline was well within the ambit of Morrow's authority and duties as principal of Eutaw High School, he was engaged in a discretionary function when he used force to discipline Jones in the main office for perceived misconduct occurring at school. *See, e.g., Saylor v. Board of Educ. of Harlan County, Ky.*, 118 F.3d 507, 515 (6th Cir. 1997) (holding that even if the defendant teacher's alleged corporal punishment of a high school student gave rise to a constitutional violation, the teacher was protected by qualified immunity); *Wallace by Wallace v. Batavia School Dist. 101*, 870 F.Supp. 222, 227 (N.D. Ill. 1994) (same).

Thus, the question is whether it was clearly established at the time of the incident, April 21, 1999, that Morrow's alleged actions violated Jones's constitutional rights. The Eleventh Circuit has stated that in looking to whether the law was clearly established that a given course of action was unconstitutional, a court is to look only to decisions of the United States Supreme Court, the

Page 14 of 37

Eleventh or old Fifth Circuit, or the highest court of the state in which the case arose. *Marsh v. Butler County*, 268 F.3d 1014, 1032 n. 10 (11th Cir. 2001) (en banc); *Jenkins by Hall v. Talladega City Bd. of Educ.*, 115 F.3d 821, 827 n.4 (11th Cir. 1997). The Supreme Court has also suggested, however, albeit it in dicta, that a plaintiff might show that a right was clearly established for purposes of defeating a claim of qualified immunity by "identif[ying] a consensus of cases of persuasive authority [from outside the jurisdiction] such that a reasonable officer could not have believed that his actions were lawful," at least where there is an absence of authority from within the jurisdiction where the claim arose. *Wilson*, 526 U.S. at 617, 119 S.Ct. at 1700.

"For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official's action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, — U.S. —, —, 122 S.Ct. 2508, 2515, 153 L.Ed. 2d 666 (2002) (citations and internal quotation marks omitted). Therefore, qualified immunity may sometimes be denied even though there is not a prior binding case whose facts are "materially similar." *Id.* at 2514. Rather,

> [i]n some circumstances, as when an earlier case expressly leaves open whether a general rule applies to the particular type of conduct at issue, a very high degree of prior factual particularity may be necessary. But general statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though 'the very action in question has [not] previously been held unlawful."

*Id.* (quoting *United States v. Lanier,* 520 U.S. 259, 270-71, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed. 2d 523 (1987)). The

Eleventh Circuit has also recognized, "When an excessive force plaintiff shows 'that the official's conduct lies so obviously at the very core of what the . . . [Constitution] prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of caselaw,' the official is not entitled to the defense of qualified immunity." *Skrtich v. Thornton*, 280 F.3d 1295, 1305 n.9 (11th Cir. 2002) (*quoting Priester v. City of Riviera Beach*, 208 F.3d 919, 926 (11th Cir. 2000) (bracketed material in *Skrtich*).

If one assumes that a high level of factual similarity to a prior Alabama Supreme Court or binding federal case is required to clearly establish that Morrow's alleged conduct in this case violated the Constitution, then it must be conceded that Morrow would be entitled to qualified immunity on this claim. Although perhaps sufficiently analogous to this case to have put a reasonable official on notice, *Neal* cannot have clearly established the constitutional right that Jones seeks to vindicate because the Eleventh Circuit issued that decision more than a year after the incident in this case took place. And prior to *Neal*, no precedent from the United States Supreme Court, the Alabama Supreme Court, the Eleventh Circuit, or the old Fifth Circuit had held specifically that a public school official's application of even obviously excessive physical force against a student might violate the Constitution.

In *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed. 2d 711 (1977), the Supreme Court held that the Eighth Amendment's ban on cruel and unusual punishment does not apply outside of the criminal law context, and thus did not reach the formally administered spankings and paddlings of two public school students. Also, in its en banc treatment of that same case below, the

old Fifth Circuit held that such corporal punishment did not violate substantive due process.[11] *Ingraham v. Wright*, 525 F.2d 909, 916-17 (5th Cir. 1976) (en banc). The Fifth Circuit explained that because it found that corporal punishment was not, "in concept, or as authorized by the school board, or as applied throughout the school system" arbitrary or unrelated to legitimate educational goals, and given the existence of state law remedies for instances of abuse, it believed that it would be "a misuse of [its] judicial power to determine, for example, whether a teacher has acted arbitrarily in paddling a particular child for certain behavior or whether in a particular instance of misconduct five licks would have been a more appropriate punishment than ten licks." *Id.* at 916-17.

However, as *Neal* later made explicit, the Fifth Circuit's decision in *Ingraham* does not and never did stand for the proposition that a school official's application of force against a student, regardless of the circumstances or the form or excessiveness the punishment, is immune from constitutional scrutiny. Rather, the Fifth Circuit's *Ingraham* decision entailed only that the federal courts of the circuit would not in the name of substantive due process examine individual instances of traditional corporal punishment when applied pursuant to a formal policy that, on its face, contained sufficient safeguards against the imposition of arbitrary, unnecessary, or excessive punishment generally, and where the state also provided sufficient post-punishment remedies. *See Ingraham*, 525 F.2d at 916-17; *Neal*, 229 F.3d at 1073-74. But in this case, Morrow's alleged attack upon Jones using a metal cane to strike blows to the head and upper body is a far cry from corporal punishment as traditionally conceived, such as paddling or spanking a child on the buttocks, nor was it even purportedly inflicted pursuant to a formal corporal punishment policy. Thus, the Fifth

---

[11]The Supreme Court declined to consider the substantive due process issue on its certiorari review of the Fifth Circuit's judgment in *Ingram*. *See* 430 U.S. at 659 & n.12.

Circuit's *Ingraham* decision did not control whether Morrow's alleged actions violated substantive due process.

As the Supreme Court recently reaffirmed in *Hope v. Pelzer, supra*, general constitutional principles may be sufficient to show that the law was clearly established for purposes of defeating a claim of qualified immunity. Looking at the issue in that light, it was well established that "the Due Process Clause was intended to prevent government officials from abusing [their] power, or employing it as an instrument of oppression." *County of Sacramento*, 503 U.S., at 126, 112 S.Ct., at 1069 (citations and internal quotation marks omitted). It was also well known that "the 'liberty' specially protected by the Due Process Clause includes the right[ ] . . . to bodily integrity . . . ." *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 2267, 138 L.Ed. 2d 772 (1997) (citing *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952)). *See also Shillingford*, 634 F.2d at 265 ("The right to be free of state-occasioned damage to a person's bodily integrity is protected by the fourteenth amendment guarantee of due process." Furthermore, this due process right to bodily integrity had been interpreted to encompass a prohibition against the use of undue physical force by state officials in contexts that are not covered by the Fourth Amendment's proscription against "unreasonable . . . seizures" or the Eighth Amendment's ban on "cruel or unusual punishments." *See County of Sacramento*, 523 U.S. at 843, 118 S.Ct. 1708; *Graham*, 490 U.S. at 394-95; 109 S.Ct. 1865.[12]  The courts had found this principle to be particularly apt in

---

[12]Prior to the Supreme Court's decision in *Graham*, the Eleventh Circuit and the old Fifth Circuit were among the many lower federal courts that conceived substantive due process as a sort of generalized proscription against arbitrary and malicious application of physical force by state officials. *See, e.g., Hamilton v. Chaffin*, 506 F.2d 904, 909 (5th Cir. 1975) ("The use of excessive force constitutes a violation of the Fourteenth Amendment right to due process, and, as such, is actionable under Section 1983"; *George v. Evans*, 633 F.2d 413, 416 (5th Cir. 1980) ("Whether or not an eighth amendment violation can be established, the use of undue force by a

settings in which the relationship between the plaintiff and the state official accused of using excessive force was marked by a significant degree of custodial control. For example, the Eleventh Circuit had noted that the Due Process Clause of the Fourteenth Amendment, protects a pretrial detainee from the use of excessive force that amounts to punishment. *Vineyard v. County of Murray, Ga.*, 990 F.2d 1207, 1211 (11th Cir. 1993). Such due process protection had also been extended to a 16-year old boy who was subjected to excessive force by the superintendent of a juvenile detention facility while awaiting trial on a delinquency charge. *H.C. by Hewett v. Jarrard*, 786 F.2d 1080, 1085-86 (11th Cir. 1986). The Supreme Court and Eleventh Circuit had acknowledged in a number of other cases that substantive due process requires that certain minimal safety standards be met in other circumstances in which the state takes a person into its custody. Compare *Youngberg v.*

---

prison guard is actionable as a deprivation of fourteenth amendment due process rights."); *Shillingford*, 634 F.2d at 265 ("A law enforcement officer's infliction of personal injury on a person by the application of undue force may deprive the victim of liberty without due process of law."); *Courtney v. Reeves,* 635 F.2d 326, 329 (5th Cir. Unit A Jan. 1981) ("(I)t (is) clear that the constitutional right to due process of law includes . . . a right not to be treated with unreasonable, unnecessary or unprovoked force by those charged by the state with the duty of keeping accused and convicted offenders in custody."); *Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495, 1500-01 (11th Cir. 1985) (en banc) (upholding a substantive due process claim against police officers who allegedly beat and shot the plaintiff's decedent in the course of an arrest). In the 1989 *Graham* decision, however, the Supreme Court limited the reach of the Fourteenth Amendment as it relates to excessive force claims by holding that the rubric of substantive due process does not apply to force that state officials use that is governed by another, more textually-explicit provision of the Constitution, such as the Fourth Amendment's prohibition against unreasonable searches and seizures or the Eighth Amendment's prohibition against cruel and unusual punishments. *See* 430 U.S. at 393-95; 109 S.Ct. 1865. It is important to recognize, however, that while *Graham* counseled the lower federal courts to more carefully examine the specific textual source of a person's constitutional right to be free from arbitrary or excessive force in a given set of circumstances, *Graham* did not purport to limit the breadth of circumstances in which the Constitution might protect the people from excessive force at the hands of state officials. Rather, *Graham* said merely that if the Fourth or Eighth Amendment applies, then the Fourteenth does not. *See County of Sacramento*, 523 U.S. at 843, 118 S.Ct. 1708; *Lanier*, 520 U.S. at 272 n.7, 117 S.Ct. 1219.

*Romeo*, 457 U.S. 307, 315-17, 102 S.Ct. 2452, 2458-59, 73 L.Ed.2d 28 (1982) (substantive due process grants those subjected to involuntary civil commitment rights to reasonably safe conditions of confinement, freedom from unreasonable bodily restraints, and such minimally adequate training as might be required to ensure safety and freedom from restraint); *Revere v. Massachusetts General Hospital*, 463 U.S. 239, 244-245, 103 S.Ct. 2979, 2983-2984, 77 L.Ed.2d 605 (1983) (substantive due process imposes requirements upon the state to obtain necessary medical care for persons under arrest); and *Taylor v. Ledbetter*, 818 F.2d 791, 797 (11th Cir. 1987) (if foster parents with whom the state places a child injure the child, and that injury results from the state's deliberate indifference or gross negligence, such may violate a substantive due process liberty interest), with *Dacosta v. Nwachukwa*, 304 F.3d 1045 (11th Cir. 2002) (no substantive due process violation where an instructor at a state military college committed an assault against an adult female student, who presumably is not subject to compulsory attendance laws); *Skinner v. City of Miami*, 62 F.3d 344 (11th Cir. 1995) (no constitutional violation where a group of firefighters pinned a co-worker to the floor of the firehouse and subjected him to a degrading assault as a part of a hazing ritual; distinguishing cases where assault victims were in state custody). And although such cases often dealt with issues more specifically concerning the state's constitutional obligations to take affirmative steps to protect those involuntarily in state custody from harm, they also necessarily imply that the Constitution imposes negative constraints upon the direct infliction of physical harm by state officials themselves through the use of undue force in such settings. *See, e.g., Kyle K. v. Chapman*, 208 F.3d 940, 943-44 (11th Cir. 2000) (holding allegations that staff members subjected a mental patient to physical abuse stated a substantive due process violation, relying upon *Youngberg*'s requirement of a safe environment).

The Eleventh Circuit has held that public school officials do not exert the very high degree of control over minor schoolchildren so as to render them "in custody" for purposes of imposing a constitutional duty upon the state to *protect* them from harm by *non-state* actors. *See Wyke v. Polk County Sch. Bd.*, 129 F.3d 560, 569 (11th Cir. 1997). However, it is as obvious as it is undeniable that the relationship between school officials and the minor school children is, in fact, "custodial" for many purposes, insofar as minor children are required to attend school by compulsory education laws and may be forced to submit to school officials' authority. *See Davis Next Friend LaShonda D. v. Monroe County Bd. of E duc.*, 526 U.S. 629, 646, 119 S.Ct. 1661, 1673 (1999) (describing the nature of the state's power over minor public schoolchildren as " 'custodial and tutelary, permitting a degree of supervision and control that could not be exercised over free adults.' " (quoting *Vernonia School Dist. 47J v. Acton*, 515 U.S. 646, 655, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995)). Indeed, the Supreme Court had held that a due process liberty interest in "unjustified intrusions on personal security," which encompasses "freedom from bodily restraint and punishment," is implicated for purposes of requiring the state to establish certain minimum procedures guarding against the imposition of arbitrary or excessive corporal punishment in public schools. *See Ingram*, 430 U.S. at 672-74; 97 S.Ct. at 1413-14. As the Court later explained, "Although children sent to public school are lawfully confined to the classroom, arbitrary corporal punishment represents an invasion of personal security to which their parents do not consent when entrusting the educational mission to the State." *Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 2301, 132 L.Ed. 2d 418 (1995). Also, in the course of deciding that the state law remedies in *Ingraham* were adequate to protect against deprivations without procedural due process, the Supreme Court notably observed "there can be no deprivation of substantive rights *as long as* disciplinary corporal punishment is within the

limits of the common-law privilege [to use reasonable force in disciplining children]." *id.*, 430 U.S. at 676, 97 S.Ct. at 1415 (emphasis added), thus implying that substantive constitutional rights may be violated when corporal punishment exceeds the limits of such privilege.

Given the at least limited custodial nature of the relationship between minor students and school officials, it is almost inconceivable that substantive due process would not protect the bodily integrity of such students from violation by teachers or other school officials. As the Fourth Circuit explained more than 20 years ago in its seminal corporal punishment decision in *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir. 1980), "Clearly recognized in persons charged with or suspected of crime and in the custody of police officers, we simply do not see how we can fail also to recognize [the substantive due process right to ultimate bodily security] in public school children under the disciplinary control of public school teachers." In fact, it was already established in Alabama at the time of the incident in this case that the substantive due process liberty interest in bodily integrity protects minor school children from at least some forms of physical abuse by teachers and other school officials. *See C.B. v. Bobo*, 659 So. 2d 98, 102-04 (Ala. 1995) (holding that a teacher's sexual molestation of a minor student violates substantive due process and may form the basis for a § 1983 claim). Furthermore, to the extent that it may be considered in the qualified immunity analysis in this circuit, the court finds that there was a clear consensus of authority from outside the jurisdiction clearly indicating that excessive corporal punishment upon students generally may give rise to a constitutional violation. *See Wilson*, 526 U.S. at 617, 119 S.Ct. at 1700. Indeed, each of the *eight* federal Circuit Courts of Appeals to examine the issue since *Ingraham* had acknowledged that excessive corporal punishment in the public schools could violate the Constitution. *See Metzger v. Osbeck*, 841 F.2d 518, 520 (3rd Cir.1988); *Hall,* 621 F.2d at 613; *Fee v. Herndon*, 900

F.2d 804, 808 (5th Cir. 1990);[13] *Saylor v. Bd. of Educ. of Harlan County, Ky.*, 118 F.3d 507, 514 (6th Cir. 1997); *Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1014-16 (7th Cir. 1995); *Wise v. Pea Ridge Sch. Dist.*, 855 F.2d 560, 564 (8th Cir. 1988); *P.B. v. Koch*, 96 F.3d 1298, 1303 n. 4, 1304 (9th Cir. 1996); *Garcia v. Miera*, 817 F.2d 650, 654 (10th Cir. 1987).

The court concludes that despite the absence of a binding Alabama or federal case directly on point, general substantive due process principles broadly prohibiting arbitrary, irrational, and malicious applications of physical abuse by state officials, particularly against those over whom they have a degree of custodial authority, sufficiently and clearly established at the time of the incident in this case that a school principal's use of an obviously excessive amount of corporal punishment against a minor student, done summarily and not done pursuant to a facially valid formal policy, violated the constitution. *See P.B. v. Koch*, 96 F.3d at 1302-03 (holding that a high school principal was not protected by qualified immunity for hitting and grabbing three of his students on separate occasions, despite the fact that there was no precedent from within the circuit holding that excessive corporal punishment could violate the Constitution). As to Morrow's specific conduct, Jones charges that Morrow used a metal cane to maliciously and forcefully strike him, a 13 year-old boy, three times on the upper body and head with only minimal provocation, causing a head injury that

---

[13]While acknowledging that "corporal punishment in public schools is a deprivation of substantive due process when it is arbitrary, capricious, or wholly unrelated to the legitimate state goal of maintaining an atmosphere conducive to learning," *Fee*, 900 F.2d at 808 (internal quotation marks omitted), the court notes that the Fifth Circuit has adhered to the position that corporal punishment is never arbitrary for purposes of substantive due process provided that the forum state affords sufficient post-punishment civil and criminal remedies for instances of abuse. *Id.*; *Moore v. Willis Independent School Dist.*, 233 F.3d 871, 874-76 (5th Cir. 2000). Such reasoning is, however, contrary to Eleventh Circuit precedent. *See Neal*, 229 F.3d at 1075 n.2 (*citing McKinney v. Pate*, 20 F.3d 1550, 1556-57 (11th Cir. 1994) (en banc)); *see also Zinermon v. Burch*,494 U.S. 113, 125, 110 S.Ct. 975, 983, 108 L.Ed. 2d 100 (1990).

required medical attention and the effects of which injury have allegedly persisted for years. The court concludes that Morrow's alleged conduct lies so close to the core of what the Constitution prohibits with regard to a state official's use of excessive and unjustified force that Morrow is not protected by qualified immunity. *See Skrtich*, 280 F.3d at 1305 & n.9. Therefore, the court concludes that Morrow is not entitled to summary judgment on this claim.

### c.   Can the Board be held Liable?

Kirkland claims that the Board may also be held liable under § 1983 for Morrow's violation of his substantive due process rights. This is so, Kirkland asserts in her complaint, because Morrow allegedly was a final policymaker for the Board in matters relating to the use of corporal punishment at Eutaw High School[14] and because the Board allegedly failed to properly train and supervise Morrow, which purportedly resulted in the substantive due process violation.[15] The Board, on the other hand, contends that it is entitled to summary judgment on this claim because the evidence shows that Morrow was not a policymaker, that the Board did not fail to properly train or supervise Morrow, and that any failure on that front does not show the requisite degree of culpability. The court agrees with the Board.

A local government body, such as a county school board, may not be held liable under § 1983 for constitutional deprivations on the theory of respondeat superior. *Denno v. School Bd. of Volusia County, Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). "Rather, they may be held liable only if such constitutional torts result from an official government policy, the actions of an official fairly deemed

---

[14]*See* Complaint ¶ 23.

[15]*See id.* at ¶ 22.

to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law. *Id.* (citing *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037-38 (further citations omitted)). "It is not sufficient for a government body's policy to be tangentially related to a constitutional deprivation." *Cuesta v. School Bd. of Miami-Dade County, Fla.*, 285 F.3d 962, 967 (11ᵗʰ Cir. 2002). Rather, the " 'official policy or custom must be the moving force of the constitutional violation in order to establish liability of a government body under § 1983.' " *Id.* (quoting *Gilmere v. City of Atlanta, Ga.*, 737 F.2d 894, 901 (11ᵗʰ Cir. 1984) (internal quotes omitted).

The record demonstrates without dispute that any substantive due process violation that Morrow may have committed by virtue of his hitting Jones with his cane was not caused by any unconstitutional policy that the Board had officially or formally adopted. In fact, the Board had previously adopted a written corporal punishment policy, which contains guidelines that are reasonable on their face and act as substantial safeguards against the unconstitutional imposition of arbitrary or excessive corporal punishment, such as that allegedly used in this case.[16]   Indeed, Morrow's allegedly forcefully striking Jones in the head with a metal cane in front of other students in a moment of apparent anger is directly contrary to the Board's policy, in aspects both substantive

---

[16]Corporal Punishment Policy, Exhibit 5 to Morrow Depo. I. Specifically, the Board's policy requires, among other things, the following: (1) that corporal punishment be administered "with extreme care, tact and caution"; (2) that such punishment may be administered only by the principal or a teacher in the presence of another adult school employee; (3) that except for the most egregious offenses, students are to be given a warning that a certain behavior will occasion corporal punishment before resort to such punishment is made; (4) that a student be given at least "a brief but adequate opportunity" to explain his side of the story; (5) that the principal or teacher administering the punishment "must have full control of their emotions before administering corporal punishment" and may not administer such punishment "in anger or with malice at any time"; and (6) that the punishment inflicted "shall be at all times reasonable and proper," considering the age, size, sex, and physical condition of the student, as well as his or her "ability . . . to bear the punishment."

and procedural. "When an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the [local government]." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 926, 99 L.Ed.2d 107 (1988) (plurality opinion). *See also Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1173 (11th Cir. 2001), cert. granted, judgment vacated on other grounds, and remanded, — U.S. —, 122 S.Ct. 2653, 153 L.Ed.2d 829 (2002). The record further shows that Morrow's actions in corporally punishing Jones were subject to review by the Board and its superintendent, demonstrating that the Board, and not Morrow was the final policymaker in this area. *See Praprotnik*, 485 U.S. at 129-30, 108 S.Ct. at 927-28. Nor is there any indication that Morrow was acting pursuant to a Board-sanctioned custom that had the force of law.

The court also rejects Kirkland's theory that the Board might be held liable for Morrow's actions based upon the Board's alleged failure to adequately supervise or train him. There are "limited circumstances" in which a local government will be held liable because it inadequately trained or supervised its employees, who then infringed upon a plaintiff's constitutional rights. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (quoting *City of Canton v. Harris*, 489 U.S. 378, 387, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989)). In order to prevail on such a claim a plaintiff must show that the government knew that a need to train or supervise its employees existed but made a "deliberate choice not to take any action." *Id.* A need for training and/or supervision will be proven when there is sufficient evidence that: (1) the government's employees "face clear constitutional duties in recurrent situations"; or (2) "a pattern of constitutional violations exists such that the [government] knows or should know that corrective measures are needed." *Young v. City of Augusta, Ga. Through DeVaney*, 59 F.3d 1160, 1172 (11th Cir.1995).

Kirkland cannot meet this showing.  The Board had promulgated and distributed a written corporal punishment policy that was constitutionally valid on its face in establishing guidelines that would, if followed by its employees, reasonably protect students against the imposition of arbitrary and excessive punishment.  Even if Morrow acted contrary to such policy in punishing Jones, the Board's adoption and distribution of the policy suggests that the Board did not act with deliberate indifference to students constitutional rights.  Furthermore, Kirkland has not disputed Morrow's claim that he had not himself ever previously been accused of using excessive force against a student.  Nor is there any evidence indicating that the use of constitutionally excessive force by school officials against students was a widespread problem in the Greene County school system.  The court concludes, therefore, that, even assuming that the Board did not adequately train or supervise Morrow in this area, the evidence shows that such failure did not amount to "deliberate indifference" to students' constitutional rights.  *See Gold*, 151 F.3d at 1350-51.  Accordingly, the Board is entitled to summary judgment on this claim.

### 2.    First Amendment–Freedom of Speech

Kirkland maintains that Morrow's hitting Jones with the cane abridged Jones's right to freedom of speech under First Amendment[17] because such action allegedly was a sanction for Jones's voicing opposition to what he believed was Elliot's unjustified and unlawful seizure and search of his book bag.  She also asserts that the Board is liable under section 1983 for this constitutional violation because it was allegedly committed pursuant to Board policy and because the Board failed

_____

[17]The First Amendment states, in relevant part, "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const. amend. I.  This prohibition applies to the states as well as the federal government by virtue of its incorporation though the Due Process Clause of the Fourteenth Amendment.  *44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 489 n.1,116 S.Ct. 1495, 1501 n.1, 134 L.Ed.2d 711 (1996).

properly to train or supervise Morrow.   Defendants contend that they are entitled to summary

judgment because the evidence shows that Morrow's actions did not violate the First Amendment

violation, and that even if they did, such was not the result of any unconstitutional policy or custom

of the Board, and Morrow was protected by qualified immunity.   The court concludes that both

Morrow and the Board are entitled to summary judgment on these § 1983 claims.

"[S]tudents do not shed their constitutional rights to freedom of speech or expression at the

schoolhouse gate." *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 506, 89 S.Ct.

733, 21 L.Ed.2d 731 (1969).   However, "the First Amendment rights of students in the public

schools 'are not automatically coextensive with the rights of adults in other settings,' *Bethel School*

*District No. 403 v. Fraser*, 478 U.S. 675, 682, 106 S.Ct. 3159, 3164, 92 L.Ed.2d 549 (1986), and

must be 'applied in light of the special characteristics of the school environment.' *Tinker, supra*, 393

U.S., at 506, 89 S.Ct., at 736; . . . ." *Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 266, 108

S.Ct. 562, 567 (1988) (additional citation omitted).   Thus, a student

> may express his opinions . . . if he does so without materially and substantially
> interfering with the requirements of appropriate discipline in the operation of the
> school and without colliding with the rights of others.   But conduct by the student,
> in class or out of it, which for any reason--whether it stems from time, place, or type
> of behavior--materially disrupts classwork or involves substantial disorder or
> invasion of the rights of others is, of course, not immunized by the constitutional
> guarantee of freedom of speech.

*Tinker*, 393 U.S. at 512-13, 89 S.Ct. at 740 (citations and internal quotations marks omitted).

From the facts adduced in the record, the court concludes that Kirkland is precluded from

maintaining a free speech claim on behalf of Jones under § 1983. Jones's only potentially protected

speech during the episode is his questioning of Morrow and Elliot as to why they were bringing him

to the office and why they were going to check his bag, perhaps along with some sort of suggestions

that they did not have proper cause to do either. In fact, Jones admits that he did not tell Elliot could not to look in his bag and even that it was he, *i.e.*, Jones, who physically opened his bag for Elliot.[18] Furthermore, Jones's own testimony is that Morrow exclaimed that he was "tired of" Jones and began hitting him only after Jones had left his seat in violation of Morrow's express order and had started walking across the room towards where Elliot was conducting the search of Jones's bag. Thus, even if Jones's verbalizations about the absence of proper cause to bring him to the office and search his bag were not loud or profane, as Jones claims, any punishment that Morrow visited upon Jones undisputedly was directly in response not to Jones's *speech* but, rather, to his disobedient and disruptive *actions* of getting out of his chair and walking towards Elliot, signifying an intent to involve himself physically in the search. The Constitution " '[does not] compel[ ] the teachers, parents, and elected school officials to surrender control of the American public school system to public school students.' " *Fraser*, 478 U.S. at 686, 106 S.Ct. at 3166 (quoting *Tinker*, 393 U.S. at 526, 89 S.Ct. at 746 (Black, J., dissenting)). Thus, even assuming for the moment that Morrow and Elliot did not have the right to search Jones's bag, either pursuant to Fourth Amendment protections or because the search was in violation of a state law or local policy, the court does not believe that the First Amendment afforded Jones the right to defy Morrow's order to remain seated while the search was being conducted, nor would it prohibit Morrow from punishing Jones based upon a reasonable belief that Jones was attempting to interfere with the search. Because Jones's "opposition" to the search precipitating any alleged punishment undisputedly included conduct that "materially and substantially interfer[ed] with the requirements of appropriate discipline in the operation of the school," *Tinker*, 393 U.S. at 512-13, 89 S.Ct. at 740, Jones was plainly subject to

---

[18]Jones Depo. at 155-56.

sanction by school officials without running afoul of the First Amendment. Because Jones's free speech rights were not violated, defendants are entitled to summary judgment on the First Amendment claims.[19]

### 3.    Fourth Amendment–Unreasonable Search and Seizure

Kirkland's final federal claims are based upon the contention that Elliot's seizure and search of Jones's book bag violated Jones's rights under the Fourth Amendment.[20] She also seeks to hold the Board liable for this alleged constitutional violation. Elliot and the Board argue that they are entitled to summary judgment on that grounds that there was no Fourth Amendment violation and that even if there was, Elliot is entitled to qualified immunity, and it was not caused by any Board custom or policy. The court agrees that Elliot and the Board are entitled to summary judgment on these claims.

The Fourth Amendment's prohibition on unreasonable searches and seizures applies to searches conducted by public school officials. *New Jersey v. T.L.O.*, 469 U.S. 325, 333, 105 S.Ct. 733, 738, 83 L.Ed. 2d 720 (1985). "A search of a child's person or of a closed purse or other bag carried on her person, no less than a similar search carried out on an adult, is undoubtedly a severe

---

[19]Alternatively, assuming that Morrow's actions did somehow violate the First Amendment, the court concludes that Morrow is entitled to qualified immunity. The only case that Kirkland cites to show that the law was clearly established that Morrow's conduct violated the First Amendment is *Tinker* itself, which is based upon facts that are plainly distinguishable and whose analysis actually counsels a determination that there was no free speech violation in the instant case. There is also no evidence indicating that the Board had an unconstitutional policy or custom that caused a First Amendment violation. Thus, the Board is entitled to summary judgment on this claim as well.

[20]The Fourth Amendment provides, in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, . . . ." U.S. Const. amend IV.

violation of subjective expectations of privacy." *Id.*, 469 U.S. at 337, 105 S.Ct. at 740-41 (footnote omitted). However, "the accommodation of the privacy interests of schoolchildren with the substantial need of teachers and administrators for freedom to maintain order in the schools does not require strict adherence to the requirement that searches be based on probable cause to believe that the subject of the search has violated or is violating the law." *Id.*, 469 U.S. at 341, 105 S.Ct. at 742. Rather, the legality of a search of a student depends on the reasonableness, under all the circumstances, of the search. *Id.*

Under *T.L.O.*, determining the reasonableness of a search by school officials involves a two-pronged test. First, a court must consider whether the search was justified at its inception. *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160 (11th Cir. 2001), *cert. granted, judgment vacated on other grounds, and remanded*, — U.S. —, 122 S.Ct. 2653, 153 L.Ed. 2d 829 (2002). "A search will be justified at its inception if the school official has 'reasonable grounds for suspecting that the search will turn up evidence the student has violated or is violating either the law or the rules of the school.' " *Id.* (quoting *T.L.O.*, 469 U.S. at 341-42, 105 S.Ct. at 743).

Second, the court must determine whether the scope of the search was reasonably related to the circumstances which justified the interference. *Id.* "The scope of the search will be permissible 'when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.' " *Id.* (quoting *T.L.O.*, 469 U.S. at 342, 105 S.Ct. at 743).

The determination of whether a particular search or seizure is reasonable under the Fourth Amendment must be based on commonsense judgments and inferences about human behavior. *See Illinois v. Wardlow*, 528 U.S. 119, 125, 120 S.Ct. 673, 676, 145 L.Ed. 2d 570 (2000). Morrow and

Elliot were aware that Jones had repeatedly been disciplined for engaging in various forms of disruptive conduct and also that, about three months before the events giving rise to this action, a teacher at Eutaw High School had discovered Jones in possession of a weapon, a box cutter. Jones's record and reputation as a disciplinary problem, particularly as it pertained to his recent possession of a dangerous item on school grounds, is properly considered when assessing whether the seizure and search of his book bag was reasonable. *Cf. United States v. Farese*, 612 F.2d 1376, 1379 n.5 (5th Cir. 1980) (a suspect's criminal record and reputation for criminal activity are among the relevant factors that may be considered in determining whether probable cause exists to make an arrest); *Davis v. United States*, 431 F.2d 693, 694 (5th Cir. 1970) (prior criminal record of defendant was relevant to establishment of necessary reasonableness of suspicion held by officers in making border search). Of course, a person's record alone generally will not justify an official's individualized determination to search or seize a person or his property. *Cf. United States v. Sprinkle*, 106 F.3d 613, 617 (4th Cir. 1997) ("A prior criminal record 'is not, standing alone, sufficient to create reasonable suspicion.' " (quoting *United States v. Davis*, 94 F.3d 1465, 1469 (10th Cir. 1996)). However, Elliot claims that Jones also seemed to be acting nervously, which is corroborated by Jones own admission that he was continuously shaking his leg from the time he was brought to the office. Elliot has further alleged, and Jones has not sufficiently disputed, that as soon as Elliot picked up Jones's bag in order to get it out of the middle of the floor, Jones seemed preoccupied with his bag and was asking questions indicating that he was apprehensive that it might be searched. Such nervous, evasive behavior is a pertinent factor in determining whether the search was reasonable. *Wardlow*, 528 U.S. at 124, 120 S.Ct. at 676. Given the reduced level of suspicion required in the context of school searches, the court concludes that, under the totality of the circumstances, Elliot's

search of Jones's book bag was justified at its inception and was reasonably related in scope to the legitimate objectives of the search. Accordingly, the court finds, as a matter of law, that Jones's Fourth Amendment rights were not violated and that defendants are entitled to summary judgment on these claims.[21]

### B.    The State Law Claims

#### 1.    The Claims Against Morrow and Elliot

Kirkland brings claims under Alabama state law against Morrow and Elliot individually. Specifically, she contends that, based upon the Morrow's infliction of corporal punishment, Elliot's grabbing Jones by the back of the neck, and the search of Jones's book bag, Morrow and Elliot are guilty of assault, battery, invasion of privacy, intentional infliction of emotional distress, negligence, and wantonness. Morrow and Elliot argue they are entitled to summary judgment on each of these claims. However, the *entirety* of Morrow and Elliot's argument with regard to these claims in defendants' initial brief in support of summary judgment is as follows:

---

[21]Alternatively, if it is assumed that Morrow or Elliot committed a Fourth Amendment violation by virtue of the search of Jones's bag, they are entitled to qualified immunity on these claims, and thus summary judgment. A search of a student's book bag for contraband is clearly an exercise of Morrow and Elliot's discretionary authority, and plaintiff has failed to show that prior caselaw clearly established that the search was unconstitutional.

Although the Board is ineligible for qualified immunity, the court concludes that it would also be entitled to summary judgment as well. As with the substantive due process excessive force claims, the Board had previously adopted policies outlining when and under what conditions school officials could conduct searches of students and their property. *See* Exhibit 4 to Morrow Depo. I. These policies are constitutional on their face, and even if they were violated by Morrow or Elliot, such nonconforming actions do not represent Board policy for purposes of imposing liability under § 1983. There is also no indication that Morrow or Elliot had previously been accused of conducting improper searches of students or that there was a pattern of Fourth Amendment violations within the school system. Thus, it cannot be said that the Board was deliberately indifferent to students' constitutional rights, so as to give rise to liability for any failure to train or supervise Board employees.

> Alabama law . . . provides, that as employees of boards of education, Elliot
> and Morrow are entitled to state agent-immunity. *Ex parte Cranman*, 792 So. 2d 392
> (Ala. 2000); *Suits v. Glover*, 71 So. 2d 49, 260 Ala. 449 (Ala. 1954). Furthermore,
> the plaintiff cannot present substantial evidence to support his state law claims.

Defendants' Brief at 20. Plaintiff argues that these vague contentions fail to show that Morrow and

Elliot are affirmatively entitled to summary judgment on these claims. The court agrees.

Unadorned assertions that defendants are entitled to immunity and that the plaintiff cannot

prove his case may suffice when filing an answer to the complaint, but substantially more is required

of a movant for summary judgment under Fed. R. Civ. P. 56. Specifically, such a movant bears the

initial burden to demonstrate, based upon competent evidence in the record, that there is no genuine

issue of material fact and that he is entitled to judgment as a matter of law; until the movant does so,

the non-movant has no duty to present evidence or otherwise show why there is a need for trial. *See*

*Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). And on that score, it is well settled

that the movant cannot satisfy his initial responsibility under Rule 56 simply by stating that his

adversary cannot meet his burden at trial. *See United States v. Four Parcels of Real Property in*

*Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 n.19 (11th Cir. 1991). Thus,

Morrow and Elliot's blanket statement that plaintiff "cannot present substantial evidence to support

his state law claims" does not shift the burden to plaintiff.

Likewise, Morrow and Elliot's conclusory assertion that they are entitled to state-agent

immunity is insufficiently developed to show that they are entitled to summary judgment. *See*

*N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) (issues raised in a

perfunctory manner, without supporting arguments and citation to authorities, are generally deemed

to be waived); *Gossett v. Du-Ra-Kel Corp.*, 569 F.2d 869, 872 (5th Cir. 1978) (bald assertions of

ultimate facts are ordinarily insufficient to support summary judgment). The onus is on the parties, not the court, to formulate and develop arguments in support of their legal positions on summary judgment. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11ᵗʰ Cir. 1995) (en banc). State-agent immunity is an affirmative defense that Morrow and Elliot must prove as a matter of law to prevail on summary judgment, *Matthews v. Alabama A & M Univ.*, 787 So. 2d 691, 695 (Ala. 2000), but they have made no attempt to analyze the specific requirements of state-agent immunity, nor have they sought to explain how they apply to the plaintiff's claims based upon the evidence of record. While it might be that a properly supported and argued motion could have secured summary judgment in favor of Morrow and Elliot on some or all of the state law claims against them, the court concludes that defendants' motion for summary judgment as submitted does not do so.[22] Defendants' motion is due to be denied as it relates to the state law claims against Morrow and Elliot individually.

### 2.    The Claims Against the Board

Finally, Kirkland contends in her complaint that the Board may also be held liable under Alabama law for Morrow and Elliot's alleged torts. The Board responds, however, that it is entitled to summary judgment on the grounds that it enjoys sovereign immunity from tort suits brought under state law. *See, e.g., Carroll ex rel. Slaught v. Hammett*, 744 So. 2d 906, 910 (Ala. 1999); *Godby v.*

---

[22]In their reply brief, defendants have articulated certain alleged deficiencies in plaintiff's state law claims. *See* Defendants' Reply Brief at 6-7. However, the court declines to consider these contentions because defendants raised them for the first time in their reply brief. *See Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1296 n.19 (11ᵗʰ Cir. 2001) (argument raised for the first time in a reply brief is untimely); *Maricus W. ex rel. Marvin M. v. Lanett City Bd. of Educ.*, 141 F.Supp. 2d 1064, 1067 (M.D. Ala. 2001) (a court generally should not consider arguments raised for the first time in a summary judgment reply brief).

*Montgomery County Bd. of Educ.*, 996 F.Supp. 1390, 1415 (M.D. Ala. 1998).[23]   Apparently recognizing the validity of this defense, Kirkland has expressly abandoned these claims.  *See* Plaintiff's Brief at 17 n.4.  Accordingly, the court shall grant summary judgment for the Board on all state law claims.

## IV.  CONCLUSION

Based on the foregoing, defendants' motion for summary judgment is due to be GRANTED IN PART AND DENIED IN PART.  It is due to be GRANTED with respect to the following claims:  (1) all claims, both federal and state, brought against the Greene County Board of Education; (2) the § 1983 First Amendment free speech claim against Morrow; (3) the § 1983 Fourth Amendment claim against Elliot; and (4) any § 1983 excessive force claim against Elliot, to the extent that such a claim was encompassed by the allegations of the complaint.  Accordingly, those claims are due to be dismissed with prejudice.

However, defendants' motion for summary judgment is due to be DENIED with respect to the following claims:  (1) the § 1983 substantive due process excessive corporal punishment claim against Morrow; and (2) all state law claims against Morrow and Elliot.

---

[23]The court notes, however, that county boards of education in Alabama are not entitled to Eleventh Amendment immunity from federal tort suits brought pursuant to § 1983.  *Stewart v. Baldwin County Bd. of Educ.*, 908 F.2d 1499, 1511 (11th Cir. 1990).

By separate order, the Court shall grant in part the defendants' motions for summary judgment and deny it in part.

Done this _____ day of _____, 2003.

_____
Chief United States District Judge
U. W. Clemon